**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　)　**STIPULATION AND ORDER OF**
　　　　　　　　　　　　　　　　　　)　**SETTLEMENT**
　　- against -　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　No. 10 Civ. 9398 (TPG)
$7,206,157,717 ON DEPOSIT AT　　　)
JP MORGAN CHASE BANK, N.A.,　　　)　ECF CASE
IN THE ACCOUNTS SET FORTH ON　　)
SCHEDULE A,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendant in rem.　)
　　　　　　　　　　　　　　　　　　)

———————————————————

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/10

The United States Attorney's Office for the Southern District of New York, by Preet

Bharara, United States Attorney (the "Office" or the "Government"); and the estate of Jeffry M.

Picower (the "Estate"), by its representative, Barbara Picower (in such capacity, the "Estate

Representative"), and its attorneys, Schulte Roth & Zabel LLP, hereby enter into this stipulation

and order (the "Stipulation") and stipulate and agree as follows:

WHEREAS, on December 17, 2010, the Government filed a verified complaint seeking

forfeiture of all right, title, and interest in $7,206,157,717 on deposit at JP Morgan Chase Bank,

N.A., in the accounts set forth on Schedule A to the complaint, and all property traceable thereto

(the "Defendant in rem"), pursuant to 18 U.S.C. § 981(a)(1)(C), as property that constitutes and

is derived from proceeds traceable to specified unlawful activity, as that term is defined in 18

U.S.C. § 1956(c)(7) (the "Complaint");

WHEREAS, the Complaint alleges that the Defendant in rem is derived from proceeds

traceable to offenses orchestrated by Bernard L. Madoff ("Madoff") that were part of a scheme

to defraud investors of Bernard L. Madoff Investment Securities LLC and its predecessor, Bernard L. Madoff Investment Securities (collectively and separately, "BLMIS");

WHEREAS, the Complaint further alleges that the Defendant in rem is property traceable to transfers made from accounts at BLMIS held or controlled, directly or indirectly, by Jeffry M. Picower (collectively, the "Picower Accounts," which, for the avoidance of doubt, are the accounts set forth in Schedule B to the Complaint);[1]

WHEREAS, after Jeffry M. Picower's death on October 25, 2009, the Estate Representative was duly appointed as the Executor of the Estate by the New York County Surrogate's Court on or about January 4, 2010;

WHEREAS, the Estate Representative understands that the Government seeks to forfeit the Defendant in rem, and that the Office will request that such property, if forfeited to the United States, be distributed to victims of the BLMIS fraud through the process of remission, consistent with applicable Department of Justice regulations;

WHEREAS, in light of information made public after the BLMIS fraud was uncovered in December 2008, the Estate Representative does not dispute (a) that the Picower Accounts received funds from BLMIS that were proceeds of, and traceable to, conduct constituting specified unlawful activity perpetrated by Madoff and others; and (b) that the Defendant in rem (i) constitutes property that is the proceeds of, or traceable to, conduct constituting specified

---

[1]  In certain instances, multiple BLMIS account numbers were associated with a particular Picower Account. In certain other instances, the name of the account holder associated with a particular Picower Account at BLMIS changed. The Parties acknowledge that the list of account numbers and account names in Schedule B to the Complaint does not identify each separate account number or account name for the Picower Accounts.

2

unlawful activity perpetrated by Madoff, and/or (ii) may be considered a substitute *res* for such property;

WHEREAS, however, were this matter to be litigated, the Estate Representative would assert that Jeffry M. Picower and the other Picower Parties, as that term is defined in paragraph 9, below, (a) had no involvement in, knowledge of, or participation in the BLMIS fraud, the conduct constituting specified unlawful activity committed by Madoff and others, or any other criminal or unlawful activity occurring at BLMIS, and (b) were innocent owners of all assets transferred to them from BLMIS at all relevant times;

WHEREAS, the Estate Representative nevertheless wishes to divest the Estate of any and all funds received from BLMIS so that such funds may be returned to the victims of the fraud, and to use the remaining assets of the Estate primarily to establish a charitable foundation in accordance with Jeffry M. Picower's last Will and wishes;

WHEREAS, the Estate Representative and the Office (each a "Party," and together, the "Parties") wish to resolve this action without litigation on the terms set forth herein and to further the goal of compensating the victims of the fraud perpetrated through BLMIS;

WHEREAS, simultaneously with entering into this Stipulation, the Estate Representative is entering into an agreement with the trustee appointed under section 5(b)(3) of the Securities Investor Protection Act of 1970, as amended ("SIPA"), in the consolidated liquidations of BLMIS and Madoff (the "SIPA Trustee") providing for the transfer of funds from the Estate to the SIPA Trustee in settlement of an adversary proceeding filed by the SIPA Trustee against certain of the Picower Parties (the "Bankruptcy Settlement," a copy of which is attached hereto as Exhibit A), which is subject to the approval of the United States Bankruptcy Court for the Southern District of New York; and

3

WHEREAS, the Office intends to credit against the amount being forfeited to the Government (the "Forfeiture Amount," which, for the avoidance of doubt, is equal to $7,206,157,717) the amount actually transferred to the SIPA Trustee pursuant to the Bankruptcy Settlement, up to $5,000,000,000 (the "Bankruptcy Settlement Amount"), and understands that the SIPA Trustee intends to distribute those funds to the victims of the fraud perpetrated through BLMIS, in accordance with SIPA;

The Parties hereby stipulate and agree, and the Court orders, as follows:

1.      The recitals above form an integral part of this Stipulation and are fully incorporated herein.

2.      The Estate Representative agrees to forfeit the Defendant in rem to the Government, on the terms set forth herein, in full satisfaction of the Government's claims for forfeiture as alleged in the Complaint.  The Clerk of this Court is hereby directed to forthwith issue a Warrant for the Arrest of the Defendant in rem (the "Warrant").  In the event that, for whatever reason, the Government is unable to execute the Warrant on the full Forfeiture Amount, this Stipulation shall be null and void just as if the Court had not approved it, pursuant to paragraph 17, below.

3.      Simultaneously with her execution of this Stipulation, the Estate Representative shall cause the Forfeiture Amount to be wired into one or more escrow accounts (the "Escrow Accounts") that shall be established at JP Morgan Chase Bank, N.A. (the "Escrow Agent"), pursuant to that certain escrow agreement by and among the Estate Representative, the Government, the SIPA Trustee, the Escrow Agent, and, as set forth therein, the Securities Investor Protection Corporation ("SIPC") (the "Escrow Agreement," a copy of which is attached hereto as Exhibit B).  Any and all costs associated with the Escrow Accounts, including but not

4

limited to any and all costs for its establishment and operation (the "Escrow Costs"), are to be paid by SIPC and are, in no event, to be paid by the Government or the Estate Representative, or to be paid from the Forfeiture Amount or any other funds or property in the Escrow Accounts. Once the Estate Representative has caused the full Forfeiture Amount to be deposited into the Escrow Accounts, the Estate Representative shall have no further obligation under this Stipulation to provide any funds or property for forfeiture.

4. The Government agrees to credit the Bankruptcy Settlement Amount against the Forfeiture Amount. The Forfeiture Amount less the Bankruptcy Settlement Amount is referred to in this Stipulation as the "Settlement Funds."

5. Within three business days of the date that the Court approves this Stipulation, the Government and the Estate Representative shall each execute a Notice For Release of Settlement Funds, in the form annexed to the Escrow Agreement as Exhibit A. The Government shall then cause the fully-executed Notice For Release of Settlement Funds to be delivered to the Escrow Agent pursuant to the terms of the Escrow Agreement, whereupon the Escrow Agent shall confirm the instructions and release the Settlement Funds, plus any interest or appreciation that has been accrued or paid and is attributable to such property, by wire in same day funds to the following account maintained by the United States Marshals Service, or to such other accounts that may be designated by the Government pursuant to the terms of the Escrow Agreement ("the USMS Account"):

> ABA #021030004
> ALC #00008154
> U.S. Marshals Service
> c/o Federal Reserve Bank of New York
> 33 Liberty Street
> New York, New York 10045
> Reference: To Be Supplied by the Government

6.     The Escrow Agent shall release funds in the Bankruptcy Settlement Amount, not to exceed $5,000,000,000, to or at the direction of the SIPA Trustee, upon satisfaction of all conditions precedent to the Bankruptcy Settlement and pursuant to the terms of the Bankruptcy Settlement and the Escrow Agreement.  Within five business days thereafter, pursuant to the terms of the Escrow Agreement, the Escrow Agent shall transfer to the USMS Account, for forfeiture in accordance with the instructions in the preceding paragraph, any remaining funds in the Escrow Accounts, including but not limited to funds attributable to interest or appreciation accrued or paid in connection with any portion of the Forfeiture Amount.  The Escrow Agent shall thereafter terminate the Escrow Accounts in accordance with the Escrow Agreement.

7.     In the event that this Stipulation has been approved by the Court, but (a) the Bankruptcy Settlement Amount has not been paid to the SIPA Trustee pursuant to the terms of the Bankruptcy Settlement within three years of the date hereof, or (b) the Bankruptcy Settlement is rejected by a final and non-appealable order of a court of competent jurisdiction, whichever is sooner, then within five business days thereof, the Government and the Estate Representative shall each execute a Notice For Release of Forfeited Funds, in the form annexed to the Escrow Agreement as Exhibit C.  The Government shall then cause the fully-executed Notice For Release of Forfeited Funds to be delivered to the Escrow Agent pursuant to the terms of the Escrow Agreement, whereupon the Escrow Agent shall confirm the instructions and release the Bankruptcy Settlement Amount, together with any remaining funds in the Escrow Accounts, including but not limited to funds attributable to interest or appreciation accrued or paid in connection with any portion of the Forfeiture Amount, by wire in same day funds to the USMS Account, for forfeiture in accordance with the instructions in paragraph 5, above.  The

6

Escrow Agent shall thereafter terminate the Escrow Accounts in accordance with the Escrow Agreement.

8.    The Estate and the Estate Representative shall not file, or cause any other person or entity to file, or assist any other person or entity in filing, any claim to the Defendant in rem, or in any other way interfere with or delay the forfeiture of the Defendant in rem.

9.    The Parties hereby fully and finally compromise, settle, release, and dispose of:

(a) any and all civil claims under the asset forfeiture and/or money laundering statutes that the United States has asserted or could assert in connection with BLMIS, Madoff, and the specified unlawful activity described in the Complaint, including any receipt of money and any transfers of money received from BLMIS (collectively, beginning with the phrase "in connection with," referred to herein as the "Covered Conduct") against any of the following people, entities, or property:

(i)    Jeffry M. Picower, the Estate, the Estate Representative, Barbara Picower, Capital Growth Company, Favorite Fund, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Company, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Co., Jeffry M. Picower, P.C., Decisions Incorporated, Decisions Incorporated #2, Decisions Incorporated #3, Decisions Incorporated #4, Decisions Incorporated #5, Decisions Incorporated #6, the Picower Foundation, the Picower Institute for Medical Research, Trust FBO Gabrielle H. Picower, Trust FBO Abe Picower, Picson Management Group, Decisions Incorporated Special, Jeffry M. Picower D P Partnership, Jeffry M. Picower #2, Decisions Incorporated L Account, JMP Investment, Jeffry M. Picower, P.C., Employee Profit Sharing Plan, Jeffry M. Picower Money-Purchase

7

Pension Plan, Decisions Incorporated Money Purchase Pension Plan, Explanations Incorporated Money Purchase Pension Plan, April C. Freilich, ACF Services Corporation, ACF Services Corporation Money-Purchase Pension Plan, Apple Securities Management Incorporated, and the Retirement Income Plan for Employees of Monroe Systems for Business, Inc., and each of their respective officers, employees, partners, agents, predecessors, successors, assigns, heirs, and representatives (collectively, the "Picower Parties");

(ii)    any property currently in the custody, control, or possession of any of the Picower Parties; and

(iii)    any property currently in the custody, control, or possession of any other person or entity that was received from any of the Picower Parties, including but not limited to recipients of any grants made by the Picower Foundation or the Picower Institute for Medical Research, solely to the extent that such property is traceable to the Picower Accounts; and

(b)    any and all claims or defenses that any of the Picower Parties (to the extent that such Picower Parties are within the control of the Estate Representative) may or could assert against the Government related to the Covered Conduct.

The claims and defenses encompassed in subparagraphs (a) and (b) shall be referred to as the "Settled Claims." For the avoidance of doubt, (i) no employee or insider of BLMIS is a Picower Party within the meaning of this Stipulation and this Stipulation is not intended to release, and the Settled Claims do not include, any claim against any employee or insider of BLMIS, or any property in the custody, control, or possession of any employee or insider of BLMIS; (ii) this Stipulation is not intended to release, and the Settled Claims do not include, any criminal liability

8

for any individual or entity whatsoever; and (iii) notwithstanding the existence or outcome of any claims to the Forfeiture Amount or the Defendant in rem, the releases set forth in this paragraph shall remain in full force and effect.

10.    The Estate Representative represents and warrants that (a) to the best of her knowledge and belief, the Estate is currently the sole owner of the Defendant in rem; and (b) the Estate Representative is authorized to enter into this Stipulation and each of its terms and conditions, and to legally bind the Estate, herself in her individual capacity (as to paragraphs 9(b), 12, and 13), and the Picower Parties (to the extent such Picower Parties are within the control of the Estate Representative), thereto.  In the event that either of these representations or warranties is untrue, then, notwithstanding paragraphs 3 and 9 above, any and all claims of the United States described therein shall not be released and shall not be part of the term "Settled Claims," but this Stipulation shall in all other respects remain in full force and effect.

11.    The Defendant in rem represents the total net amount of withdrawals received by the Picower Parties from BLMIS through, and as reflected in account statements for, the Picower Accounts.  The Estate Representative represents and warrants that she is not aware that any of the Picower Parties received property or funds from BLMIS except through, and as reflected in account statements for, the Picower Accounts.  In the event that information is received or discovered by the Government after the date of this Stipulation showing that the Picower Parties received additional funds or property from BLMIS or Madoff, directly or indirectly, other than through, and as reflected in account statements for, the Picower Accounts, then, notwithstanding paragraphs 3 and 9 above, the Government shall be free to assert any and all claims, including but not limited to civil forfeiture claims, against such funds or property, or against property traceable thereto, or to bring any and all claims against the Picower Parties and seek any and all

9

available remedies (which shall not be limited to the value of such funds or property), provided, however, that any such claims asserted against the Picower Parties and any remedies sought shall be on account of such funds or property and not on account of the Defendant in rem, but the releases set forth in paragraph 9 of this Stipulation shall otherwise remain in full force and effect.

12.    Upon reasonable request of the Government, the Estate Representative agrees, on behalf of the Estate, the Picower Accounts, and each of the Picower Parties (to the extent they are within the control of the Estate Representative), to reasonably cooperate with the Government in connection with responding to any claims asserted against the Forfeiture Amount or the Defendant in rem. Nothing in this paragraph shall require any of the Picower Parties to waive the attorney-client privilege, the work product doctrine, or any other privilege, immunity, or statutory or constitutional right or protection.

13.    The Picower Parties (to the extent that they are within the control of the Estate Representative) are hereby barred from asserting any claim against the United States of America or any agency, instrumentality, agent, or employee thereof, and from assisting others in asserting any such claim, in connection with the Settled Claims, including but not limited to any claims for costs or attorneys' fees.

14.    This Stipulation does not constitute an admission of liability or fault on the part of the Picower Parties. Notwithstanding any other provision of this Stipulation, the forfeiture provided for herein does not constitute a fine, penalty, or punitive damages.

15.    The Parties hereby agree that this Stipulation, including the Exhibits hereto, is the entire understanding of the Parties with respect to the subject matter of this Stipulation and it is intended to be the complete and exclusive statement thereof. The Parties agree that each

10

participated equally in the preparation of this Stipulation, and that no provision shall be construed against any other Party as draftsman.

16.    The Parties do not intend to confer any benefit by or under this Stipulation upon any person or entity other than the Government and the Picower Parties. No person or entity shall be entitled to assert any rights under this Stipulation other than the Government and the Picower Parties, nor shall any person or entity other than the Government and the Picower Parties be permitted to use this Stipulation as evidence of an admission regarding any claim, right, or defense that such person or entity may assert.

17.    Notwithstanding anything to the contrary herein, this Stipulation is expressly subject to and contingent upon approval of the Court. If this Stipulation, or any portion hereof, is rejected by the Court or if it is overturned or modified on appeal, then (i) all funds transferred to the Government by the Escrow Agent pursuant to this Stipulation shall be returned to the Estate, and (ii) this Stipulation shall be null and void and have no further force and effect and, in such event, neither this Stipulation nor any negotiations and writings in connection herewith shall in any way be construed as or deemed to be evidence of an admission on behalf of any Party hereto regarding any claim or right that such Party may have against any other Party hereto. Notwithstanding the foregoing sentence, to the extent that the USMS Account lacks sufficient funds to return to the Estate the full amount of the funds transferred to the Government by the Escrow Agent pursuant to this Stipulation, then (a) the Government shall, solely to that extent, be relieved of its obligation to return funds to the Estate pursuant to clause (i) of the foregoing sentence, and (b) any civil liability of the Picower Parties to the Government for any claim referred to in the releases set forth in paragraph 9, above, shall be reduced to the extent of any funds not so returned to the Estate. In the event that this Stipulation, or any portion hereof, is

11

rejected by the Court or if it is overturned or modified on appeal, the Parties hereto agree to negotiate in good faith to revise the terms of this Stipulation accordingly, such that in full satisfaction of the Picower Parties' civil liability the full Forfeiture Amount will be available for distribution to victims of the fraud perpetrated through BLMIS.

18.     For purposes of this Stipulation, an order shall be considered "final and non-appealable" when (a) the time to appeal the order has expired, or (b) if any appeal has been taken, any and all such appeals have been fully and finally resolved without material modification of the order.

19.     After (a) the time for filing claims to the Defendant in rem has expired, or (b) if any claims have been filed, any and all such claims have been resolved, the Government shall seek entry of a final order of forfeiture in respect of any property forfeited in this action.

20.     This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

21.     This Stipulation may not be changed, modified, or amended except in a writing signed by the Parties and/or their counsel and approved by the Court.

22.     This Stipulation may be executed in any number of counterparts and shall constitute one agreement, binding upon all Parties hereto as if all Parties signed the same document. Further, all facsimile and digital images of signatures shall be treated as originals for all purposes.

23.     The Court shall retain exclusive jurisdiction with respect to any and all issues or disputes that may arise in connection with this Stipulation and its enforcement.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**SO ORDERED:**

Dated: December 17, 2010
      New York, New York

HON. THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

**AGREED TO BY:**

Dated: December 17, 2010
      New York, New York

PREET BHARARA
United States Attorney
Attorney for the United States of America

MATTHEW L. SCHWARTZ
BARBARA A. WARD
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Tel.: (212) 637-1945/1048
Facsimile: (212) 637-2937
E-mail: matthew.schwartz@usdoj.gov

Dated: December __, 2010
      New York, New York

BARBARA PICOWER, in her capacity as
Estate Representative

Dated: December __, 2010
      New York, New York

SCHULTE, ROTH & ZABEL LLP
Attorneys for the Estate Representative

MARCY RESSLER HARRIS, ESQ
GARY STEIN, ESQ.
919 Third Avenue
New York, New York 10022
Tel.: (212) 756-2000
Facsimile: (212) 593-5955
E-mail: marcy.harris@srz.com

13

**SO ORDERED:**

Dated: December ___, 2010
     New York, New York

_____

HON. THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

**AGREED TO BY:**

Dated: December ___, 2010
     New York, New York

PREET BHARARA
United States Attorney
Attorney for the United States of America

_____

MATTHEW L. SCHWARTZ
BARBARA A. WARD
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Tel.: (212) 637-1945/1048
Facsimile: (212) 637-2937
E-mail: matthew.schwartz@usdoj.gov

Dated: December ___, 2010
     New York, New York

_____

BARBARA PICOWER, in her capacity as
Estate Representative

Dated: December 17, 2010
     New York, New York

SCHULTE, ROTH & ZABEL LLP
Attorneys for the Estate Representative

_____

MARCY KESSLER HARRIS, ESQ
GARY STEIN, ESQ.
919 Third Avenue
New York, New York 10022
Tel.: (212) 756-2000
Facsimile: (212) 593-5955
E-mail: marcy.harris@srz.com

# EXHIBIT A

## BANKRUPTCY STIPULATION

## AGREEMENT

This AGREEMENT, dated as of December 17, 2010, is made by and among IRVING H. PICARD, in his capacity as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq., as amended ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), on the one hand, and the ESTATE OF JEFFRY M. PICOWER (the "Picower Estate"), by Barbara Picower ("Mrs. Picower"), as Executor of the Picower Estate and on behalf of the Picower BLMIS Accounts (defined in paragraph E hereof), on the other hand (each of the Trustee and Mrs. Picower, a "Party", and both, the "Parties").

## BACKGROUND

A.     BLMIS and its predecessor was a registered broker-dealer and a member of the Securities Investor Protection Corporation ("SIPC").

B.     On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against, among others, BLMIS and Madoff, captioned SEC v. BLMIS, et al., No. 08-CV-10791(LLS).

C.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 78eee(a)(3) of SIPA alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 78eee(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 78eee(b)(4) of SIPA, where it is currently pending as SIPC v. BLMIS, No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

D.     At a plea hearing on March 12, 2009, in the case captioned United States v. Madoff, No. 09-CR-213 (DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS. On June 29, 2009, Madoff was sentenced to 150 years in prison.

E.     Jeffry M. Picower ("Mr. Picower") was an attorney, accountant and businessman who maintained accounts at BLMIS on behalf of himself, his family members, corporations, and partnerships; pension plans for which he served as a trustee; and not-for-profit entities he founded and funded (the account holders and their accounts, collectively, the

"Picower BLMIS Accounts"), identified on Attachment A hereto. Mr. Picower made decisions concerning deposits into and withdrawals from the Picower BLMIS Accounts. For purposes of this Agreement, the Picower Estate shall be considered to be one of the Picower BLMIS Accounts.

F.    On May 13, 2009, the Trustee filed a complaint (the "Complaint") commencing an adversary proceeding captioned Picard v. Picower, et al., No. 09-1197 (BRL) (the "Picower Adversary Proceeding") against Mr. Picower and certain of the Picower BLMIS Account Holders (collectively, the "Adversary Proceeding Defendants") seeking to avoid and recover under 11 U.S.C. §§ 544(b), 547, 548 and 550 and the New York Uniform Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) (collectively, the "Avoiding Powers Claims") more than $6.7 billion of transfers or other payments (the "Transfers") made to one or more of the Adversary Proceeding Defendants prior to the collapse of BLMIS. The amount that the Trustee seeks to avoid in the Picower Adversary Proceeding was subsequently increased to $7.2 billion.

G.    Prior to July 2, 2009, SIPA customer claims were filed with the Trustee with respect to the following Picower BLMIS Accounts: Jeffry M. Picower, Barbara Picower, Capital Growth Company, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JLN Partnership, Jeffry M. Picower Special Co., The Picower Foundation and ACF Services Corporation Money Purchase Pension Plan (collectively, the "Picower Customer Claims"). The Picower Customer Claims numbers are indicated on Attachment A hereto.

H.    On July 31, 2009, the Adversary proceeding Defendants moved to dismiss the Complaint on a variety of grounds (the "Motion to Dismiss"). The Trustee responded to the Motion to Dismiss on September 30, 2009 and on November 25, 2009, the Adversary Proceeding Defendants filed a reply. A hearing on the Motion to Dismiss has not been held and the Court has not ruled on the Motion to Dismiss.

I.    In September 2009, Mr. and Mrs. Picower initiated discussions with the Trustee aimed at resolving the issues set forth in the Complaint and the Motion to Dismiss.

J.    On October 25, 2009, Mr. Picower passed away. Mr. Picower's Last Will and Testament dated October 15, 2009, was submitted for probate to the Surrogate's Court of the State of New York, New York County, and Mrs. Picower was thereafter duly appointed as the executor of the Estate. Through counsel, Mrs. Picower continued the discussions with the Trustee for the purposes of clarifying some of the facts alleged in the Complaint and to resolve the outstanding issues to reach a settlement with the Trustee.

K.    Mrs. Picower, on behalf of the Adversary Proceeding Defendants, disputed the legal and factual bases of liability set forth in the Complaint. In the months since the Complaint was filed, the Trustee has conducted extensive additional investigation. As a result, he has become aware of information, not known to him previously, that provides context for some of the allegations made in the Complaint concerning rates of return for certain of the Adversary Proceeding Defendants. While the Trustee believes that he would prevail at trial in recovering the Transfers from the Adversary Proceeding Defendants, he recognizes that there is

2

always litigation risk, particularly with respect to the Transfers that occurred beyond the six-year period preceding the Filing Date.

L.    By March 2010, the Trustee had reached agreement with Mrs. Picower that the Picower Estate would resolve the Trustee's claims against the Adversary Proceeding Defendants by payment to the Trustee of an amount between $4.8 billion and $5.0 billion. Ultimately, Mrs. Picower agreed that the Picower Estate would pay to the Trustee the sum of $5.0 billion to resolve the Picower Adversary Proceeding. Mrs. Picower's agreement with the Trustee, however, was contingent on Mrs. Picower reaching an agreement with the United States Attorney's Office for the Southern District of New York (the "Government") to resolve potential civil forfeiture liability of the Picower Estate pursuant to 18 U.S.C. § 981(a)(1)(C). As a result of subsequent negotiations with the Government, Mrs. Picower, on behalf of the Estate and the Picower BLMIS Accounts, agreed to forfeit to the Government $7,206,157,717 (the "Forfeited Funds") for distribution to Madoff fraud victims, representing an amount equal to the net funds withdrawn from BLMIS by the Picower BLMIS Accounts. The Government, and the Trustee further agreed that up to $5.0 billion of the Forfeited Funds (the "Bankruptcy Settlement Amount") would be credited to the Trustee and would thereafter be paid over to the Trustee for distribution to Madoff fraud victims.

M.    The proposed Stipulation and Order of Settlement between the Government and Mrs. Picower that effectuates the forfeiture agreement (the "Forfeiture Stipulation," annexed hereto as Attachment B), will be submitted to the District Court for approval. It requires Mrs. Picower, upon execution of the Forfeiture Stipulation, to cause the Forfeited Funds to be wired into one or more escrow accounts (the "Escrow Accounts") that have been established at JPMorgan Chase Bank, N.A. (the "Escrow Agent") pursuant to an escrow agreement (the "Escrow Agreement") executed by and among the Picower Estate, the Trustee, the Government, and, with respect to certain sections only, SIPC. Once Mrs. Picower has fulfilled her obligations as Executor under this Agreement and the Forfeiture Settlement to cause the Forfeited Funds to be wired into the Escrow Accounts, Mrs. Picower, the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants, and the Picower Releasees shall have no further payment obligations whatsoever under this Agreement.

N.    On March 31, 2010, the Trustee filed a complaint ("Fox/Marshall Complaint") commencing an adversary proceeding in the Bankruptcy Court captioned Picard v. Fox, et al., No. 10-3114 (BRL), seeking a temporary restraining order and preliminary injunction ("Preliminary Injunction") preventing the continuation of certain lawsuits commenced against certain of the Adversary Proceeding Defendants, as more particularly set forth in the Fox/Marshall Complaint. The Bankruptcy Court issued a temporary restraining order on April 1, 2010 and a Preliminary Injunction was entered on April 27, 2010.

O.    Based on the foregoing, the Parties wish to settle their disputes about the matters described above without the expense, delay, and uncertainty of litigation.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Trustee and Mrs. Picower agree as follow:

3

## AGREEMENT

1.     <u>Agreement To Bankruptcy Court Jurisdiction</u>. Mrs. Picower, on behalf of the Picower Estate and the Picower BLMIS Accounts, agrees to the jurisdiction of the Bankruptcy Court for purposes of the SIPA Proceeding and the Picower Adversary Proceeding.

2.     <u>Payment</u>. Upon execution of the Forfeiture Stipulation, Mrs. Picower will cause the Forfeited Funds to be wired into the Escrow Accounts. The Escrow Agent will release funds up to the Bankruptcy Settlement Amount within two (2) business days (a) to the Trustee upon receipt of written notice provided jointly by the Trustee and Mrs. Picower, with a copy of a final and non-appealable 9019 Order (as defined in paragraph 6 hereof) (the "<u>Final 9019 Order</u>") attached; or (b) to the Government upon written notice jointly provided by the Trustee, Mrs. Picower, and the Government, with a copy of a final, non-appealable order of forfeiture attached. For purposes of this Agreement, an order shall be considered "final and non-appealable" when (i) the time to appeal the order has expired, or (ii) if any appeal has been taken, any and all such appeals have been fully and finally resolved without material modification of the order.

3.     <u>Release By Trustee</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, upon the Trustee's or the Government's receipt of funds up to the Bankruptcy Settlement Amount, the Trustee, on behalf of himself, his attorneys, agents and advisors, and BLMIS and its estate, shall release, remit and forever discharge each of the persons and entities listed on Attachment C hereto (collectively, the "<u>Picower Releasees</u>") and each of their executors, administrators, attorneys, agents, trustees, heirs and assigns, from any and all past, present and future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, asserted or unasserted, known or unknown, absolute or contingent, in tort, contract, federal or state statutory liability, including, without limitation, under SIPA or the Bankruptcy Code, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, unjust enrichment, constructive trust, fraudulent transfer, or otherwise (including attorneys' fees, costs or disbursements), that are, have been, could have been or might in the future be asserted by the Trustee, on behalf of himself, his attorneys, agents and advisors, and BLMIS and its estate, against any of the Picower Releasees and each of their executors, administrators, attorneys, agents, trustees, heirs and assigns, and that arise out of, are based on, or relate in any way to BLMIS, the Picower BLMIS Accounts, the Adversary Proceeding Defendants, or the Picower Releasees. Subject to paragraph 6 below, the releases contained herein shall become effective upon the Trustee's or the Government's actual receipt of funds up to the Bankruptcy Settlement Amount without any further action by any of the Parties.

4.     <u>Release By The Picower Releasees</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, upon the Trustee's or the Government's receipt of funds up to the Bankruptcy Settlement Amount, each of the Picower Releasees, by having an authorized representative sign

4

a Release Subscription for each Picower Releasee, hereby releases, remits and forever discharges the Trustee and all his agents, BLMIS and its estate, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, arising out of or in any way related to BLMIS. Subject to paragraph 6 hereof, the release contained herein shall become effective upon the Trustee's or the Government's actual receipt of funds up to the Bankruptcy Settlement Amount without any further action by any of the Parties.

     5.   Dismissal Of Picower Adversary Proceeding. Within six (6) business days of the earlier to occur of (a) the entry of the Final 9019 Order (as defined in Paragraph 6) by a court of competent jurisdiction, or (b) the Government's actual receipt of funds up to the Bankruptcy Settlement Amount, the Trustee will file a Notice of Dismissal dismissing the Picower Adversary Proceeding with prejudice and without costs to any of the Parties. From the date of this Agreement through the earliest to occur of (a) or (b) of this paragraph, the Picower Adversary Proceeding shall be stayed and no further actions may be taken by any of the Parties thereto.

     6.   Bankruptcy Court Approval; Effective Date. This Agreement is subject to, and shall become effective and binding on the Parties, upon the earliest to occur of (a) the entry of a final and non-appealable order by a court of competent jurisdiction approving the Trustee's Motion for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving an Agreement By and Between the Trustee and the Picower Estate and Enjoining Certain Claims (the "Final 9019 Order"); or (b) the entry of a final and non-appealable order approving the Forfeiture Stipulation. Once this Agreement becomes effective and binding on the Parties hereto, all of the provisions herein, including the releases contained in paragraphs 3 and 4, shall become and remain effective and binding on the Parties, and shall remain in full force and effect, even if no Final 9019 Order ever is entered, and even if funds up to the Bankruptcy Settlement Amount are released to the Government under paragraph 6 of the Forfeiture Stipulation, and not to the Trustee under this Agreement. The only circumstance in which this Agreement shall *not* become effective and binding is in the event that no final and non-appealable orders are entered approving either the Final 9019 Order or the Forfeiture Stipulation. In such case, and only in such case, (i) the Forfeited Funds would be returned to the Estate, less any amounts paid by the Trustee to Mrs. Picower for or in reimbursement of tax payments made by Mrs. Picower during escrow of the Forfeited Funds; (ii) this Agreement, including the releases in paragraphs 3 and 4 hereof, would not take effect and would become null and void for all purposes; (iii) the stay of the Picower Adversary Proceeding would be lifted and the Trustee, on the one hand, and the Adversary Proceeding Defendants, on the other hand, would continue to litigate their respective claims and defenses in the Picower Adversary Proceeding; (iv) the Picower Customer Claims would not be withdrawn; and (v) the Parties could not use or rely on any statement herein in the Picower Adversary Proceeding or in any public statement or other litigation relating to BLMIS or Madoff.

     7.   Permanent Injunction. The Trustee shall use his reasonable best efforts to obtain approval of the Final 9019 Order as promptly as practicable after the date of this Agreement. The Final 9019 Order shall include an order by the Bankruptcy Court pursuant to, *inter alia*, section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065 (the

5

"Permanent Injunction Order"), permanently enjoining any customer or creditor of the BLMIS estate, anyone acting on their behalf or in concert or participation with them, or any person whose claim in any way arises from or relates to BLMIS or the Madoff Ponzi scheme, from asserting any claim against the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants or the Picower Releasees that is duplicative or derivative of any claim brought by the Trustee, or which could have been brought by the Trustee against the Estate, the Picower BLMIS Accounts, the Picower Adversary Defendants or the Picower Releasees (the "Permanent Injunction"). Following entry of the Final 9019 Order, the Trustee shall use his reasonable best efforts to oppose challenges, if any, to the scope, applicability or enforceability of the Permanent Injunction.

8.    Cooperation. Upon reasonable request of the Trustee, Mrs. Picower agrees reasonably to cooperate with the Trustee in connection with any efforts to obtain approval of the Final 9019 Order and to enforce it to extinguish any claims that may be asserted in violation of the Final 9019 Order.

9.    Withdrawal Of Claims. Each of the Picower Customer Claims shall be deemed withdrawn with prejudice when the releases in paragraphs 3 and 4 hereof become binding and effective, without any further action necessary by any of the Parties.

10.    Termination Of BLMIS Account Agreements with BLMIS. All agreements between the Picower BLMIS Accounts and BLMIS shall be deemed terminated when the releases in paragraphs 3 and 4 hereof become binding and effective, without any further action necessary by any of the Parties

11.    Authority. Mrs. Picower hereby represents and warrants to the Trustee as of the date hereof that she has the full power, authority and legal right to execute and deliver, and to perform obligations on behalf of the Picower Estate and the Picower BLMIS Accounts under this Agreement.

12.    Further Assurances. The Trustee and Mrs. Picower shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

13.    Entire Agreement. This Agreement constitutes the entire agreement and understanding between and among the Parties hereto and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

14.    Amendments, Waiver. This Agreement may not be terminated, amended or modified in any way except in a writing signed by all the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15.    Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

6.

16.     Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and the Picower Releasees, and on and their respective successors and permitted assigns.

17.     No Third Party Beneficiary. Except as expressly provided in paragraphs 3 and 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties and the Picower Releasees and their respective successors and permitted assigns.

18.     No Admission of Liability or Wrongdoing. By entering into this Agreement, Mrs. Picower does not admit and she expressly denies that she, Mr. Picower, the Picower BLMIS Accounts, the Picower Adversary Defendants, or any of the Picower Releasees have any liability to the Trustee, owe any sums to the Trustee other than sums up to the Bankruptcy Settlement Amount, or have any liability or owe any sums to any other persons or entities, other than to the Government under the terms of the Forfeiture Stipulation, arising from or related to BLMIS or the Madoff Ponzi scheme. Furthermore, Mrs. Picower does not admit and expressly denies that she, Mr. Picower, any of the Picower BLMIS Accounts, or any of the Picower Releasees engaged in any wrongdoing arising from or related to BLMIS or the Madoff Ponzi scheme, or had any knowledge thereof.

19.     Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

20.     Exclusive Jurisdiction. The Parties agree that any action for breach or enforcement of this Agreement may be brought only in the Bankruptcy Court. No Party shall bring, institute, prosecute or maintain any action pertaining to the enforcement of any provision of this Agreement in any court other than the Bankruptcy Court.

21.     Captions and Rules Of Construction. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

22.     Counterparts; Electronic Copy Of Signatures. This Agreement and attachments may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature. The Picower Releasees may evidence their execution of the Release Subscription by delivery to the Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

23.     Notices. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

7

If to the Trustee:

Irving H. Picard
E: ipicard@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201

with copies to:

David J. Sheehan
E: dsheehan@bakerlaw.com
Marc Hirschfield
E: mhirschfield@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201

If to Mrs. Picower or the Picower Releasees,
c/o:

William D. Zabel
E: william.zabel@srz.com
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
F: (212) 610-1459

Marcy Ressler Harris
E: marcy.harris@srz.com
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
F: (212) 593-5955

*[Signature page follows]*

8

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff

By: _____

Name: Irving H. Picard

Title: Trustee

**ESTATE OF JEFFRY M. PICOWER**

_____

Barbara Picower, as Executor

## RELEASE SUBSCRIPTION

The undersigned is a "Picower Releasee" as defined in the Agreement dated as of December 17, 2010, by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended, of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Barbara Picower, as executor of the Estate of Jeffry M. Picower and on behalf of the Picower BLMIS Accounts, on the other hand. For and in consideration of the Trustee's release of the undersigned under paragraph 3 of the Agreement, the undersigned subscribes to the release set forth in paragraph 4 of the Agreement (and only to such release) with the same force and effect as if the undersigned were a party to the Agreement. By signing this Subscription, the undersigned does not become a Party to the Agreement and is not undertaking any rights or obligations under any other provisions of the Agreement, except that paragraphs 10, 19, 20, 22, and 23 of the Agreement apply to this Subscription as though such paragraphs were a part of this Subscription.

Dated _____, 201_.

By: _____
    Name:
    Title:

ATTACHMENT A:  PICOWER BLMIS ACCOUNTS

| Account Number | Account Name | Claim No. |
|---|---|---|
| 100407 | DECISIONS INC SPECIAL | |
| 100416 | JEFFRY M. PICOWER | |
| 101006 | JMP INVESTMENT CO | |
| 101007 | JEFFRY M. PICOWER | |
| 101017 | JMP PERSONAL | |
| 101607 | JEFFRY M. PICOWER | |
| 101610 | PICSON MANAGEMENT GROUP | |
| 101615 | JEFFRY M. PICOWER #2 | |
| 1C1006 | CAPITAL GROWTH COMPANY | 012674, 013298 |
| 1D0010 | DECISIONS INCORPORATED | |
| 1D0011 | DECISIONS INC #2 | |
| 1D0030 | DECISIONS INC #3 | |
| 1D0032 | DECISIONS INC #4 | |
| 1D0036 | DECISIONS INC #5 | |
| 1D0082 | DECISIONS INCORPORATED #6 | |
| 1E0123 | ACF SERVICES CORPORATION MONEY PURCHASE PENSION PLAN | 12672, 013401 |
| 1F0002 | FAVORITE FUND | |
| 1J0001 | JA PRIMARY LTD PARTNERSHIP | |
| 1J0002 | JAB PARTNERSHIP | 012670, 013311 |
| 1J0003 | JEMW PARTNERSHIP | 012673, 013299 |
| 1J0004 | J F PARTNERSHIP | 012677, 013400 |
| 1J0005 | JFM INVESTMENT CO | |
| 1J0008 | JLN PARTNERSHIP | 012676, 013649 |
| 1J0009 | JMP LIMITED PARTNERSHIP | |
| 1J0024 | JA SPECIAL LTD PARTNERSHIP | 012678, 013547 |
| 1M0046 | THE RETIREMENT INCOME PLAN FOR EMPLOYEES OF MONROE SYSTEMS FOR BUSINESS, INC. | |
| 1P0017 | THE PICOWER INSTITUTE FOR MEDICAL RESEARCH | |
| 1P0018 | TRUST FBO GABRIELLE H PICOWER | |
| 1P0019 | BARBARA PICOWER | 012675, 013312 |
| 1P0020 | TRUST FBO GABRIELLE H PICOWER | |
| 1P0021 | JEFFRY M PICOWER | 012669, 013313 |
| 1P0022 | JEFFRY M PICOWER, P. C. | |
| 1P0023 | JEFFRY M PICOWER SPECIAL CO | 012671, 013671 |
| 1P0024 | THE PICOWER FOUNDATION | 012939 |

ATTACHMENT B: FORFEITURE STIPULATION

ATTACHMENT C:  PICOWER RELEASEES

Jeffry M. Picower
Estate of Jeffry M. Picower
Barbara Picower as Executor of Estate of Jeffry M. Picower
Barbara Picower
Capital Growth Company
Favorite Fund
JA Primary Limited Partnership
JA Special Limited Partnership
JAB Partnership
JEMW Partnership
JF Partnership
JFM Investment Company
JLN Partnership
JMP Limited Partnership
Jeffry M. Picower Special Co.
Jeffry M. Picower, P.C.
Decisions Incorporated
Decisions Inc #2
Decisions Inc #3
Decisions Inc #4
Decisions Inc #5
Decisions Incorporated #6
The Picower Foundation
The Picower Institute for Medical Research
Gabrielle Picower
Trust FBO Gabrielle H. Picower
Trust FBO Abe Picower
Picson Management Group
Decisions Incorporated Special
Jeffry M. Picower D P Partnership
Jeffry M. Picower #2
Decisions Incorporated L Account
JMP Investment
Jeffry M. Picower, P.C. Employee Profit Sharing Plan
Jeffry M. Picower Money Purchase Pension Plan
Decisions Incorporated Money Purchase Pension Plan
Explanations Incorporated Money Purchase Pension Plan
April C. Freilich
ACF Services Corporation
ACF Services Corporation Money-Purchase Pension Plan
Apple Securities Management Incorporated
The Retirement Income Plan for Employees of Monroe Systems for Business, Inc.

# EXHIBIT B

## ESCROW AGREEMENT

# ESCROW AGREEMENT
## (Litigation Settlement Escrow)

THIS ESCROW AGREEMENT (as the same may be amended or modified from time to time pursuant hereto, this "Escrow Agreement") is made and entered into as of December 17, 2010, by and among Barbara Picower, as Executor of the Estate of Jeffry M. Picower (the "Estate Representative"), the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney (the "Government"), and Irving H. Picard, the SIPA Trustee ("SIPA Trustee") for the liquidation proceeding pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff"), and the Securities Investor Protection Corporation ("SIPC") (the SIPA Trustee, the Estate Representative, the Government, and, solely for purposes of Sections 5, 7-10, 12, and 13 but not any other Section of this Escrow Agreement, SIPC, each a "Party" and collectively, the "Parties"), and JPMorgan Chase Bank, National Association (the "Escrow Agent").

**WHEREAS**, in connection with entry into (i) a Stipulation and Order of Settlement (the "Stipulation") executed by and among the Estate Representative and the Government and (ii) an Agreement executed by and among the Estate Representative and the SIPA Trustee (the "Agreement"), the Estate Representative agreed to establish two escrow accounts ( collectively, the "Escrow Account") subject to the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, each of the Parties and the Escrow Agent agree as follows:

1.      **Appointment.** The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.      **Total Forfeiture Fund.** The Estate Representative agrees to deposit with the Escrow Agent the sum of $7,206,157,717 (the "Escrow Deposit"). The Escrow Agent shall hold the Escrow Deposit in two non-interest bearing accounts, one in the name of "JPM AS ESC AGT FOR B PICOWER, AS EST EXEC OF J PICOWER, US GOVT, IRVING PICARD, AS SIPA TRUSTEE, AND SIPC" in the amount of $2,206,157,717 (the "Settlement Funds") and one in the name of "JPM AS ESC AGT FOR B PICOWER, AS EST EXEC OF J PICOWER, US GOVT, IRVING PICARD, AS SIPA TRUSTEE, AND SIPC" in the amount of $5,000,000,000 (the "Bankruptcy Settlement Amount"), and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "Total Forfeiture Fund") as directed in Section 3. The Escrow Agent agrees to hold the Total Forfeiture Fund as Escrow Agent for the Estate Representative, the SIPA Trustee, and the Government subject to the terms and conditions of this Escrow Agreement. The Escrow Agent shall not distribute or release the Total Forfeiture Fund except in accordance with the express terms and conditions of this Escrow Agreement.

3.      **Investment of Total Forfeiture Fund.** During the term of this Escrow Agreement, the Total Forfeiture Fund shall be invested in obligations issued or guaranteed by the United States of America. The Settlement Funds shall be invested by the Escrow Agent in overnight repurchase agreements to the extent possible, and segregated from the remainder of the Total Forfeiture Fund. The Bankruptcy Settlement Amount shall be invested in United States Treasury securities with a maturity of ninety days if possible and if not, shall remain in the applicable account. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Total Forfeiture Fund or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall not have any liability for any loss sustained as a result of any investment made pursuant to the terms of this Escrow Agreement or for the failure of the Parties to give the Escrow Agent instructions to invest or reinvest the Total Forfeiture Fund. The Escrow Agent shall have the right to liquidate any

1

investments held only in order to provide funds necessary to make required payments under Section 4 of this Escrow Agreement.

4.      **Disposition and Termination.** (a)  Within two (2) Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a Notice for Release of Settlement Funds in the form of Exhibit A hereto, duly executed by the Estate Representative and an authorized representative of the Government, and attaching a copy of the Stipulation that has been "so ordered" by the United States District Court for the Southern District of New York (the "Court"), the Escrow Agent shall release the Settlement Funds plus any interest or appreciation that has been accrued and paid and is attributable to the Settlement Funds, by wire of same day funds to the accounts maintained by the United States Marshals Service, or to such other accounts that may be designated by the Government (the "USMS Accounts").

(b)      Within [two (2)] Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a Notice for Release of the Bankruptcy Settlement Amount in the form of Exhibit B hereto, duly executed by the Estate Representative and the SIPA Trustee and (a) attaching a final, non-appealable order of the Bankruptcy Court or another court of competent jurisdiction approving the Agreement by and between the SIPA Trustee and the Estate Representative (the "Bankruptcy Settlement"), or (b) attaching a final, non-appealable order of forfeiture, whichever occurs first, the Escrow Agent shall release the Bankruptcy Settlement Amount to an account maintained by the SIPA Trustee (the "SIPA Trustee Account").

(c)      If the Settlement Funds previously have been released to the USMS Account pursuant to Section 4(a) above, and (i) the Bankruptcy Settlement Amount has been released by the Escrow Agent to the SIPA Trustee in accordance with Section 4(b), (ii) no order was entered by the Bankruptcy Court prior to the entry of a final, non-appealable order of forfeiture, or (iii) a final non-appealable order was entered rejecting the Bankruptcy Settlement, the Escrow Agent shall transfer within two (2) Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a Notice for Release of Forfeited Funds any and all funds in the Escrow Account to the USMS Account in accordance with the instructions set forth in Section 4(a) above, and shall terminate the Escrow Account.  For the avoidance of doubt, such funds shall include, in the events described in clause (i) hereof, any interest or appreciation that has been accrued and paid and is attributable to the Bankruptcy Settlement Amount.  If the events described in paragraphs (ii) or (iii) occur, any funds up to the Bankruptcy Settlement Amount that were transferred to the Trustee by the Escrow Agent pursuant to Section 4(b) will be, to the extent they have not been distributed by the Trustee, transferred to the USMS Account from the SIPA Trustee Account in accordance with the Stipulation, and consistent with SIPA and the forfeiture laws, in same day funds, within five (5) business days of receipt of instructions from the Government by the Trustee.

(d)      In the event that the Stipulation has been approved by the District Court, but (a) the Bankruptcy Settlement Amount has not been paid to the SIPA Trustee pursuant to the terms of the Bankruptcy Settlement within three years of the date hereof, or (b) the Bankruptcy Settlement is rejected by a final and non-appealable order, whichever is sooner, then within five business days thereof, the Government and the Estate Representative shall each execute a Notice For Release of Forfeited Funds, in the form annexed to the Escrow Agreement as Exhibit C.  Within two (2) Business Days after receipt (and confirmation of instructions pursuant to Section 11) by the Escrow Agent of a fully-executed Notice for Release of Forfeited Funds, the Escrow Agent shall transfer to the USMS Account any remaining funds in the Escrow Account, including the Bankruptcy Settlement Amount plus any interest or appreciation that has been accrued and paid and is attributable to the Bankruptcy Settlement Amount, by wire in same day funds to the USMS Account, for forfeiture in accordance with the instructions in the Stipulation.  The Escrow Agent shall thereafter terminate the Escrow Accounts.

(e)      For the avoidance of doubt, any order of any court shall be considered final and non-appealable for purposes of the Stipulation, the Agreement, and this Escrow Agreement only when (i) the time to appeal such order has expired, or (ii) if any appeal of such order has been taken, any and all such appeals have been fully and finally resolved without material modification of the order.

5.      **Escrow Agent.** (a) The Escrow Agent shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied.  The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to

2

comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Stipulation and/or the Agreement, nor shall the Escrow Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Escrow Agreement. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper Party or Parties without inquiry and without requiring substantiating evidence of any kind. The Escrow Agent shall not be liable to any Party, any beneficiary or other person for refraining from acting upon any instruction setting forth, claiming, containing, objecting to, or related to the transfer or distribution of the Total Forfeiture Fund, or any portion thereof, unless such instruction shall have been delivered to the Escrow Agent in accordance with Section 11 below and the Escrow Agent has been able to satisfy any applicable security procedures as may be required thereunder. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Escrow Agent shall have no duty to solicit any payments which may be due it or the Total Forfeiture Fund, including, without limitation, the Escrow Deposit, nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder, provided, however, that nothing in this Section 5(a) is intended to relieve the Escrow Agent of any duties or obligations arising under Section 11 of this Escrow Agreement.

(b)     The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent such conduct constitutes gross negligence or willful misconduct. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents. The Escrow Agent may consult with counsel, accountants and other skilled persons to be selected and retained by it. The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall refrain from taking any action and its sole obligation shall be to keep safely the Total Forfeiture Fund until it shall be given a direction in writing by the Parties which eliminates such ambiguity or uncertainty to the satisfaction of Escrow Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction. The Parties agree to pursue any redress or recourse in connection with any dispute between or among the Parties without making the Escrow Agent a party to the same. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

6.     **Succession.** (a)  The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving ninety (90) days advance notice in writing of such resignation to the Parties, specifying a date when such resignation shall take effect. If the Parties have failed to appoint a successor escrow agent prior to the expiration of ninety (90) days following receipt of the notice of resignation, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the Parties hereto. Escrow Agent's sole responsibility after such ninety (90) day notice period expires shall be to hold the Total Forfeiture Fund (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate. In accordance with Section 7, the Escrow Agent shall have the right to repayment of an amount equal to any amount due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of this Escrow Agreement.

(b)     The Escrow Agent may be removed (with or without cause) and a new escrow agent appointed by an agreement by and between the Government and the SIPA Trustee. In such event, the Government the SIPA Trustee shall deliver ten (10) days advance written notice to the Escrow Agent and the Estate Representative of such removal together with written instructions authorizing delivery of this Escrow Agreement together with the Total

3

Forfeiture Fund and any interests earned thereon, and any and all related instruments or documents to a successor escrow agent.

(c)     Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

7.     **Compensation and Reimbursement.**  SIPC agrees to advance to the SIPA Trustee, in accordance with SIPA, and the SIPA Trustee agrees to pay to the Escrow Agent funds sufficient to pay or reimburse the Escrow Agent's written requests for repayment submitted to the SIPA Trustee, for all expenses, disbursements and advances, including, without limitation, reasonable attorney's fees and expenses, incurred or made by the Escrow Agent in connection with (a) the establishment of the Escrow Account and the execution of this Escrow Agreement and (b) the performance of services under this Escrow Agreement, including reasonable compensation for services rendered hereunder, along with any fees or charges for accounts, including those levied by any governmental authority which the Escrow Agent may impose, charge or pass-through, which unless otherwise agreed in writing, shall be described in Schedule 2 attached hereto.  The obligations set forth in this Section 7 (such amounts, the "Escrow Costs") shall survive the termination of this Escrow Agreement and the resignation, replacement or removal of the Escrow Agent.

8.     **Indemnity.**  SIPC shall indemnify, defend and save harmless the Escrow Agent and its affiliates and their respective successors, assigns, agents and employees (the "Indemnitees") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, costs or expenses (including, without limitation, the reasonable and documented fees and expenses of outside counsel and experts and their staffs and all expense of document location, duplication and shipment) (collectively "Losses") arising out of or in connection with (i) the Escrow Agent's execution of and performance under this Escrow Agreement, including for tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Escrow Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except in the case of any Indemnitee to the extent that such Losses are finally adjudicated by a court of competent jurisdiction to have been caused by the gross negligence or willful misconduct of such Indemnitee, or (ii) its following any instructions or other directions, whether joint or, to the extent expressly permitted by this Escrow Agreement, singular, from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof.  The indemnity obligations set forth in this Section 8(a) shall survive the resignation, replacement or removal of the Escrow Agent or the termination of this Escrow Agreement.

9.     **Patriot Act Disclosure/Taxpayer Identification Numbers/Tax Reporting.**

**Patriot Act Disclosure.**  (a)  Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it.  Accordingly, the Parties acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Parties identity including without limitation name, address and organizational documents ("identifying information").  The Parties agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(b)     Prior to the date, if any, upon which a final and non-appealable order of forfeiture is entered, all interest or other income earned on the Total Forfeiture Fund shall be allocated, solely for tax purposes, to the Estate Representative in accordance with applicable law, and such allocated income shall be reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Deposit by the Estate Representative as if such income had been distributed during such year, notwithstanding that such income has not been so distributed.  Any other tax returns required to be filed will be prepared and filed by the Estate Representative with the IRS and any other taxing authority as required by law.  The Parties acknowledge and agree that the Escrow Agent shall have no responsibility

4

for the preparation and/or filing of any income, franchise or any other tax return with respect to the Escrow Account or the Total Forfeiture Fund or for any income earned by the Escrow Deposit. The Parties further acknowledge and agree that SIPC agrees to advance to the SIPA Trustee, in accordance with SIPA, and the SIPA Trustee agrees to pay to the Estate Representative, funds sufficient to pay or reimburse the Estate Representative's written requests for payment or repayment submitted to the SIPA Trustee for amounts equal to the taxes payable, on a quarterly basis, with respect to the income reported on IRS Form 1099 or 1042S (or such other appropriate form) as income earned on the investment of any sums held in the Total Forfeiture Fund for such quarter, which taxes shall in turn be paid by the Estate Representative with such tax distribution. The Escrow Agent shall not be responsible for calculating any amounts due to the Estate Representative under the foregoing sentence  The Escrow Agent shall withhold any taxes it deems appropriate from any distributions made pursuant to this Escrow Agreement, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.    The Escrow Agent shall provide the Estate Representative with customary information rights and access to the Escrow Account, including information related to income earned on the Escrow Deposit, to permit the Estate Representative to prepare any tax or other filing deemed necessary or advisable by the Estate Representative with respect to the Total Forfeiture Fund, the Escrow Deposit or the Escrow Accounts.

10.    **Notices.**  All communications hereunder shall be in writing and except for communications from the Parties setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to funds transfer instructions (all of which shall be specifically governed by Section 11 below), shall be deemed to be duly given when sent:

(a) by facsimile;
(b) by overnight courier; or
(c) by prepaid registered mail, return receipt requested;

to the appropriate notice address set forth below or at such other address as any Party hereto may have furnished to the other Parties in writing by registered mail, return receipt requested.

| | |
|---|---|
| If to Estate Representative | Barbara Picower, as Executor of the Estate of Jeffry M. Picower<br>c/o Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, New York 10022<br>Attention:  Marcy R. Harris, Esq.<br>Tel No.: (212) 756-2000<br>Fax No.: (212) 593-5955 |
| If to Government | United States Attorney's Office<br>Southern District of New York<br>One St. Andrew's Plaza<br>New York, New York 10007<br>Attention:  Matthew L. Schwartz<br>Tel No.: (212) 637-1945<br>Fax No.: (212) 637-2937 |
| If to the SIPA Trustee | Irving H. Picard, as Trustee<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Attention:  David J. Sheehan<br>Tel No.: (212) 589-4616<br>Fax No.: (212) 589-4201 |
| If to SIPC | Securities Investor Protection Corporation<br>805 Fifteenth Street, N.W. |

5

Suite 800
Washington, DC 20005
Attention: Josephine Wang
Tel No.: (202) 371-8300
Fax No.: (202) 371-6728

If to the Escrow Agent       JPMorgan Chase Bank, N.A.
Escrow Services
4 New York Plaza
21st Floor
New York, New York 10004
Attention: Christopher Fasouletos/Greg Kupchynsky
Fax No.: 212- 623- 6168

Notwithstanding the above, in the case of communications delivered to the Escrow Agent, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. For purposes of this Escrow Agreement, "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed.

11.      **Security Procedures.** (a) Notwithstanding anything to the contrary as set forth in Section 10, any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to any such funds transfer instructions that may otherwise be set forth in a written instruction permitted pursuant to Section 4 of this Escrow Agreement, may be given to the Escrow Agent only by confirmed facsimile and no instruction for or related to the transfer or distribution of the Total Forfeiture Fund, or any portion thereof, shall be deemed delivered and effective unless the Escrow Agent actually shall have received such instruction by facsimile at the number provided to the Parties by the Escrow Agent in accordance with Section 10 and as further evidenced by a confirmed transmittal to that number.

(b) In the event funds transfer instructions, including funds transfer instructions in the form annexed hereto in Exhibits A and B, are so received by the Escrow Agent by facsimile, the Escrow Agent shall seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule 1 hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory identified on the list of such authorized signatories set forth on Schedule 1 hereto. The persons and telephone numbers for authorized signatures and call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized signatories identified in Schedule 1, the Escrow Agent is hereby authorized both to receive written instructions from and seek confirmation of such instructions by telephone call-back to, for the Government, the Chief of the Asset Forfeiture Unit, United States Attorney's Office for the Southern District of New York, (212) 637-2800; and for the SIPA Trustee, Marc E. Hirschfield, Esq., Baker & Hostetler LLP, (212) 589-4610. The Escrow Agent may rely upon the confirmation of anyone purporting to be such person. The Escrow Agent may rely solely upon any account numbers or similar identifying numbers provided by the Parties to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Parties acknowledge that the security procedures set forth in this Section 11 are commercially reasonable.

12.      **Compliance with Court Orders.** In the event that any funds in the Escrow Account shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby directed to promptly notify the Parties to this Escrow Agreement and to cooperate with any r easonable request of any or all of the Parties to oppose, challenge or vacate such attachment, garnishment, levy or court order, judgment or decree. Notwithstanding the foregoing, the Escrow Agent shall be authorized, in its reasonable discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and shall make reasonable best efforts to notify the Parties as set forth in the preceding

6

paragraph prior to doing so. In the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modiried, annulled, set aside or vacated.

13. **Miscellaneous.** (a)(i) Until such time as entry of (A) a final non-appealable order regarding forfeiture, or (B) a final non-appealable order approving the Bankruptcy Settlement, the provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent and the Parties. (ii) Upon entry of (A) a final non-appealable order regarding forfeiture final, or (B) a final non-appealable order approving the Bankruptcy Settlement, whichever is earlier, the provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent, the Government, the SIPA Trustee, and SIPC. Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any Party, except as provided in Section 6, without the prior consent of the Escrow Agent and the other Parties.

(b) This Escrow Agreement and any claim related directly or indirectly to this Escrow Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the United States, or to the extent that state law controls, the laws of the State of New York. Each Party and the Escrow Agent irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds. No claim shall be commenced, prosecuted, or continued in any forum other than the United States District Court for the Southern District of New York or the United States Bankruptcy Court for the Southern District of New York and, to the extent those courts lack jurisdiction, in the courts of the State of New York located in the City and County of New York, and each of the Parties and the Escrow Agent hereby submits to the jurisdiction of such courts, except that the Government does not submit to jurisdiction of the courts of the State of New York. The Parties and the Escrow Agent hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Parties and the Escrow Agent further hereby waives all right to a trial by jury in any action, lawsuit, proceeding or counterclaim (whether based on contract, tort, or otherwise) arising or relating to this Escrow Agreement. To the extent that in any jurisdiction, the Estate Representative, the SIPA Trustee, or SIPC may now or hereafter be entitled to claim for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, such party shall not claim, and it hereby irrevocably waives, such immunity only insofar as it relates to or arises out of this Escrow Agreement.

(c) No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

(d) This Escrow Agreement and its Exhibits and Schedules may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the parties to this Escrow Agreement or its Exhibits or Schedules may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

(e) If any provision of this Escrow Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction. A person who is not a party to this Escrow Agreement shall have no right to enforce any term of this Escrow Agreement. The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to Escrow Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the Parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written. Except as expressly provided in Section 8 above, nothing in this Escrow Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agentand the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Escrow Agreement or any funds escrowed hereunder.

7

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By: _Barbara Picower_ as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By:_____

Name:_____

Title: _____


IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff

By:_____

Name: Irving H. Picard_____

Title: Trustee_____


SECURITIES INVESTOR PROTECTION CORPORATION,
(Only as to Sections 5, 7-10, 12, and 13)

By:_____

Name:_____

Title: _____


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
as Escrow Agent

By:_____

Name:_____

Title: _____

8

**IN WITNESS WHEREOF**, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

**ESTATE OF JEFFRY M. PICOWER,**
**Barbara Picower, as Executor**

By:_____, ___as Executor

**PREET BHARARA**
United States Attorney
Attorney for the United States of America

By:_____

Name: Matthew L. Schwartz_____

Title:  Assistant United States Attorney____

**IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff**

By:_____

Name:  Irving H. Picard_____

Title:  Trustee_____

**SECURITIES INVESTOR PROTECTION CORPORATION,**
**(Only as to Sections 5, 7-10, 12, and 13)**

By:_____

Name: Stephen Harbeck_____

Title:  President and CEO_____

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**
**as Escrow Agent**

By:_____

Name:_____

Title: _____

8

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By:_____, ___as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By:_____

Name: Matthew L. Schwartz

Title:  Assistant United States Attorney


IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff

By:_____

Name: Irving H. Picard

Title:  Trustee


SECURITIES INVESTOR PROTECTION CORPORATION, (Only as to Sections 5, 7-10, 12, and 13)

By:_____

Name: Stephen Harbeck

Title: President and CEO


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Escrow Agent

By:_____

Name:_____

Title: _____

8

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date set forth above.

ESTATE OF JEFFRY M. PICOWER,
Barbara Picower, as Executor

By:_____,___ as Executor


PREET BHARARA
United States Attorney
Attorney for the United States of America

By:_____

Name: Matthew L. Schwartz_____

Title: Assistant United States Attorney___


IRVING H. PICARD, as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff

By:_____

Name: Irving H. Picard_____

Title: Trustee_____


SECURITIES INVESTOR PROTECTION CORPORATION,
(Only as to Sections 5, 7-10, 12, and 13)

By:_____

Name: Stephen Harbeck_____

Title: President and CEO_____


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
as Escrow Agent

By:_____

Name: P. Kelly_____

Title: Executive Director_____

8

## SCHEDULE 1

**Telephone Number(s) and authorized signature(s) for
Person(s) Designated to give and confirm Instructions**

[REDACTED]

### _Fee Schedule_

Based upon our current understanding of your proposed transaction, our fee proposal is as listed below. Please note that the fees quoted are based on a review of the transaction documents provided and an internal due diligence review.

**Account Acceptance Fee *** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$5,000**  _Waived_

_**Encompassing review**_, negotiation and execution of governing documentation, opening of the account, and completion of all due diligence documentation. * Payable upon closing.

**Annual Administration Fee **** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$10,000**

_**The Administration Fee**_ covers our usual and customary ministerial duties, including record keeping, distributions, document compliance and such other duties and responsibilities expressly set forth in the governing documents for each transaction.

** _Payable upon closing and annually in advance thereafter, without pro-ration for partial years_

**Annual Collateral Fee** _(Only Applicable to the extent that a non-J.P. Morgan Investment Vehicle is selected)_ . . . . . . . .                                                                                      .   **1.5 bps ***

**For all Escrow Balances** not held in a J.P. Morgan Money Market Deposit Account and / or a J.P. Morgan Mutual Fund, an annual fee applies at highest collateral balance held.

*** _Fee is payable quarterly in arrears based on the highest balance held during such quarter._

**Additional Charges**

**Standard Escrow Legal Fees & Contract Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**Account Transaction Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**Investment Sweep Fees** _(if applicable)_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ._Waived_

Including, but not limited to, deposits, disbursements, book transfers, etc.. The Parties acknowledge and agree that they are permitted by U.S. law to make up to six (6) pre-authorized withdrawals or telephonic transfers from an MMDA per calendar month or statement cycle or similar period. If the MMDA can be accessed by checks, drafts, bills of exchange, notes and other financial instruments ("Items"), then no more than three (3) of these six (6) transfers may be made by an Item. The Escrow Agent is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a money market deposit account.

**Account Statement Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**1099 Tax Reporting Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _Waived_

**Extraordinary Expenses** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _At Cost_

_**Any reasonable**_ out-of-pocket expenses including attorney's fees required outside of the scope of typical Escrow requirements will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at cost.

**Modification of Fees**

Circumstances may arise necessitating a change in the foregoing fee schedule. The Bank will maintain the fees at a level that is fair and reasonable in relation to the responsibilities assumed and the duties performed.

10

EXHIBIT A

NOTICE FOR RELEASE OF SETTLEMENT FUNDS

to

JPMorgan Chase Bank, National Association
as Escrow Agent

> *Each of the undersigned, Barbara Picower, as executor of the Estate of Jeffry M. Picower (the "Estate Representative") and the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney (the "Government"), pursuant to Sections 4(a)) of the Escrow Agreement dated December __, 2010 among the Estate Representative, the Government, Irving H. Picard, as Trustee for the Substantively Consolidated Liquidation of Bernard L. Madoff Investment Securities and Bernard L. Madoff, and you (terms defined in the Escrow Agreement have the same meanings when used herein), hereby:*

(a) certifies that attached hereto is a copy of the Stipulation that has been "so ordered" by the United States District Court for the Southern District of New York; and

(b) instructs you to (i) release and pay the Settlement Funds, in the amount of $2,206,157,717, and any interest or appreciation that has been accrued or paid attributable to the Settlement Funds by wire of same day funds to the USMS Accounts as set forth below, within two Business Days of your receipt (and confirmation of instructions pursuant to Section 11) of this Certificate.

(c) USMS Wire Transfer Instructions:

> ABA #021030004
> ALC #00008154
> U.S. Marshals Service
> c/o Federal Reserve Bank of New York
> 33 Liberty Street
> New York, New York 10045
> Reference: _____

11

**IN WITNESS WHEREOF**, the parties hereto have executed this Notice of Release of Forfeiture Funds as of the date set forth below.

**ESTATE OF JEFFRY M. PICOWER**

By:_____,                as
    Executor

Name:_____

**UNITED STATES OF AMERICA**

By:_____

Name:_____

Title: _____

Dated: _____, _____

12

EXHIBIT B

## NOTICE FOR RELEASE OF FUNDS CONSTITUTING
## THE BANKRUPTCY SETTLEMENT AMOUNT

to

JPMorgan Chase Bank, National Association
as Escrow Agent

*Each of the undersigned, Barbara Picower, as executor of the Estate of Jeffry M. Picower (the "Estate Representative"), and Irving H. Picard, as Trustee for the Substantively Consolidated Liquidation of Bernard L. Madoff Investment Securities and Bernard L. Madoff, (the "SIPA Trustee"), pursuant to Section 4(b) and 4(c) of the Escrow Agreement dated as of December __, 2010 among the Estate Representative, the SIPA Trustee, the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney, and you (terms defined in the Escrow Agreement have the same meanings when used herein), hereby:*

(a) certifies that attached hereto is (i) a final, non-appealable order of the Bankruptcy Court or another court of competent jurisdiction approving the Bankruptcy Settlement, or (ii) a final, non-appealable order of forfeiture; and

(b) instructs you to release the Bankruptcy Settlement Amount, in the amount of $5,000,000,000, by wire of same day funds to the SIPA Trustee Account as set forth below, within two Business Days of your receipt (and confirmation of instructions pursuant to Section 11) of this Certificate.

(c) SIPA Trustee Account Instructions:

Bank Name

ABA#
Account #
Account Name

13

**IN WITNESS WHEREOF**, the parties hereto have executed this Notice for Release of Funds Constituting the Bankruptcy Settlement Amount as of the date set forth below.

**ESTATE OF JEFFRY M. PICOWER**

By:_____, as Executor

Name:_____

**SIPA TRUSTEE**

By:_____

Name:_____

Title: _____

Dated: _____, _____

EXHIBIT C

NOTICE FOR RELEASE OF FORFEITED FUNDS

to

JPMorgan Chase Bank, National Association
as Escrow Agent

*Each of the undersigned, Barbara Picower, as executor of the Estate of Jeffry M. Picower (the "Estate Representative") and the United States Attorney's Office for the Southern District of New York, by Preet Bharara, United States Attorney (the "Government"), pursuant to Section 4(b) of the Escrow Agreement dated as of December __, 2010 among the Estate Representative, the Government, and Irving H. Picard, as Trustee for the Substantively Consolidated Liquidation of Bernard L. Madoff Investment Securities and Bernard L. Madoff (the "SIPA Trustee"), and you (terms defined in the Escrow Agreement have the same meanings when used herein), hereby:*

(a) certifies that attached hereto is a copy of the final, non-appealable order of forfeiture; and

(b) instructs you to release and pay any and all funds in the Escrow Account by wire of same day funds to the USMS Account as set forth below, within two Business Days of your receipt (and confirmation of instructions pursuant to Section 11) of this Certificate.

(c) USMS Wire Transfer Instructions:

> ABA #021030004
> ALC #00008154
> U.S. Marshals Service
> c/o Federal Reserve Bank of New York
> 33 Liberty Street
> New York, New York 10045
> Reference: _____

15

**IN WITNESS WHEREOF**, the parties hereto have executed this Notice for Release of Forfeited Funds Constituting the Bankruptcy Settlement Amount as of the date set forth below.

**ESTATE OF JEFFRY M. PICOWER**

By:_____, as Executor

Name:_____

**UNITED STATES OF AMERICA**

By:_____

Name:_____

Title: _____

Dated: _____, ____